# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ING BANK N.V., § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 2:15-cv-5708 |
| MINSHENG FINANCIAL LEASING § | ADMIRALTY |
| CO LTD., SHANGHAI GUODIAN § | |
| SHIPPING COMPANY LTD., FUJIAN § | |
| GUOHANG OCEAN SHIPPING § | |
| (GROUP) CO. LTD. AND SHANGHAI § | |
| FUJIAN GUOHANG OCEAN | |
| SHIPMANAGEMENT CO. LTD., | |
| Defendants | |

## VERIFIED COMPLAINT

NOW COMES, plaintiff, ING Bank N.V. ("ING Bank") through undersigned counsel, and files this Verified Complaint against defendants Minsheng Financial Leasing Co. (hereafter "Minsheng"), Shanghai Guodian Shipping Company Ltd. ("Shanghai Guodian"), Fujian Guohang Ocean Shipping (Group) Co. Ltd. (hereafter "Fujian Guohang"), and Shanghai Fujian Guohang Ocean Shipmanagement Co. Ltd. (hereafter "Shanghai Fujian"), for damages and maritime attachment and, upon information and belief, avers as follows:

### Jurisdiction and Venue

1.

This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning Federal Rule of Civil Procedure 9(h). This action is brought pursuant to and in accordance with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.

Defendants Minsheng, Fujian Guohang, Shanghai Fujian, and Shanghai Guodian are not found within this District within the meaning of Rule B; however, their vessel, the M/V GUO YUAN 20, IMO No. 9579286 (hereafter the "GUO YUAN 20"), is or will be within the jurisdiction of this Court during the pendency of this action.

**Parties**

3.

At all material times, ING Bank was and is a banking and financial services corporation or business entity organized and existing pursuant to the laws of The Netherlands, with a place of business in Amsterdam, The Netherlands. As more fully set forth herein, ING Bank is an assignee of certain accounts, assets and maritime liens of Dynamic Oil Trading (Singapore) Pte Ltd. ("DOT"), including the accounts receivable owed by Minsheng, Fujian Guohang, Shanghai Fujian, and Shanghai Guodian corresponding to the bunkers supplied to the GUO YUAN 20.

4.

ING Bank, as the holder of DOT's aforesaid accounts receivable, prosecutes this admiralty claim against Fujian Guohang and Shanghai Fujian, *in personam*, and requests the maritime attachment of the GUO YUAN 20 as more fully set forth herein.

5.

ING Bank is the coordinator, agent, and security agent under that certain US$ 700,000,000.00 Multicurrency Revolving Borrowing Base Facilities Agreement, dated December 19, 2013 (the "Credit Agreement"), and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 19, 2013 (the "Security Agreement").

6.

DOT is a borrower and guarantor of the obligations owing under the Credit Agreement and is in default of those obligations.

7.

DOT is also a party to the Security Agreement, pursuant to which it absolutely assigned all of its rights, title and interests as of December 19, 2013, in certain assets, including customer accounts receivable for bunker deliveries, to ING Bank.

8.

DOT has assigned to ING Bank all of its rights, title and interests, including its right to institute this action against Minsheng, Fujian Guohang, Shanghai Fujian, and Shanghai Guodian for amounts owed to DOT for bunker supplied to the GUO YUAN 20, as more fully described *infra*. For clarity, DOT and ING Bank will collectively be referred to as "DOT" throughout the remainder of this pleading, unless otherwise indicated.

9.

At all material times, the GUO YUAN 20 was and still is, upon information and belief, a bulk carrier, which is managed and operated by Shanghai Fujian, and with the group owner being identified as Fujian Guohang and the registered owner being identified as Minsheng.

10.

At all material times, defendant, Fujian Guohang, was and still is, upon information and belief, a foreign business entity with an address at BM Tower, No. 218 Wusong Road, Shanghai, China, and is the group owner of the GUO YUAN 20.

11.

At all material times, defendant, Shanghai Fujian was and still is, upon information and belief, a foreign business entity with an address at BM Tower, No. 218 Wusong Road, Shanghai, China, and is the operator and manager of the GUO YUAN 20.

12.

At all material times, defendant, Minsheng, was and still is, upon information and belief, a foreign business entity with an office at Distinguished Guest Building, Beijing Friendship Hotel, 1 South Zhongguancun Street, Haidian District, Beijing, and is the registered owner of the GUO YUAN 20. Upon further information and belief, Minsheng is a leasing company which has no operational involvement in the GUO YUAN 20. Mingsheng's website states that Minsheng is a "finance leasing enterprise." See http://www.msfl.com.cn/en/index.php/About/about_intro.

13.

At all material times, defendant, Shanghai Guodian, was and still is, upon information and belief, a foreign business entity with an address at BM Tower, No. 218 Wusong Rd., Shanghai, China.

14.

Upon information and belief, Fujian Guohang or Shanghai Fujian bareboat chartered the GUO YUAN 20 from Minsheng, and remains the bareboat charterer of the vessel today. Upon further information and belief, both Shanghai Fujian and Shanghai Guodian are subsidiaries of Fujian Guohang, with the common address noted above.

15.

Upon information and belief, Shanghai Fujian, Fujian Guohang, and Shanghai Guodian are corporations collectively doing business in international trade and operating under the

common name of Fujian Guohang Shipping Group, with the common address noted above, such that Shanghai Fujian and Shanghai Guodian are merely the alter egos of Fujian Guohang, such that this Court should disregard the corporate formalities of the companies.

16.

Additionally and alternatively, upon information and belief, Shanghai Guodian was at all times authorized to act on behalf of and for Shanghai Fujian and/or Fujian Guohang and to bind Shanghai Fujian and/or Fujian Guohang to the contract for the supply of bunkers at issue in this civil action. Shanghai Fujian, Fujian Guohang, and Shanghai Guodian may sometimes be collectively referred to as the "Fujian Guohang Group."

17.

Undersigned counsel for DOT has contacted the Secretary of State for the State of Louisiana and verified that Shanghai Fujian is neither registered to do business within the State of Louisiana, nor has it appointed any registered agent for service of process within the State of Louisiana.

18.

Undersigned counsel for DOT has contacted the Secretary of State for the State of Louisiana and verified that Fujian Guohang is neither registered to do business within the State of Louisiana, nor has it appointed any registered agent for service of process within the State of Louisiana.

19.

Undersigned counsel for DOT has contacted the Secretary of State for the State of Louisiana and verified that Minsheng is neither registered to do business within the State of Louisiana, nor has it appointed any registered agent for service of process within the State of

Louisiana.

20.

Undersigned counsel for DOT has contacted the Secretary of State for the State of Louisiana and verified that Fujian Guodian is neither registered to do business within the State of Louisiana, nor has it appointed any registered agent for service of process within the State of Louisiana.

### Unpaid Bunkers Supplied and Delivered to the GUO YUAN 20

21.

DOT contracted to provide bunkers to the GUO YUAN 20 in Hong Kong, which bunkers were initially ordered by Shanghai Guodian, believed to be the agent or alter ego of Shanghai Fujian and Fujian Guohang. This contract to purchase bunkers is evidenced by a Sales Order Confirmation, No. 500-14625, a true and correct copy of which is attached as Exhibit A, hereafter the "Confirmation".

22.

The Confirmation, as well as the supply and delivery of the marine fuels to the GUO YUAN 20, were subject to the Dynamic Oil Trading (Singapore) Pte. Ltd. Terms and Conditions of sale for Marine Bunkers, Edition 2012, a true and correct copy of which is attached as Exhibit B, hereafter "General Terms". More specifically, the Confirmation provided in relevant part, as follows:

> The sale and delivery of the marine fuels described above are subject to the Dynamic Oil Trading Terms and Conditions of sale(s) for Marine Bunkers. The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as 'Buyer' and to Dynamic Oil Trading as 'Seller'.

> The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://www.dynamicoiltrading.com/dynamic-gtc-2012.pdf

(Exh. A, Confirmation, p. 2.)

23.

Article B.1 of the General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charterers, bareboat charterers, and charterers. (Exh. B, General Terms, p. 2, art. B.1.) As discussed *infra*, on or about October 8, 2014, the GUO YUAN 20 accepted marine bunkers from DOT pursuant to the Confirmation. Accordingly, the GUO YUAN 20, her manager, operator and possible bareboat charterer Shanghai Fujian, her group owner and possible bareboat charterer Fujian Guohang, her beneficial owner Minsheng, and the agent / alter ego of the demise charterers Shanghai Guodian fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the sales order confirmation and to the General Terms, which General Terms were incorporated in the sales order confirmation by express reference and adoption. See *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 265 (5th Cir. 2011) See also *World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, No. CIV.A. 13-5421, 2015 WL 575201, at *3 (E.D. La. Feb. 11, 2015) (holding that Singapore law recognizes incorporation by reference).

24.

Article H.3 of the General Terms provides as follows:

> [DOT] shall have a security interest in and a maritime lien (where such jurisdiction recognises such a lien) on all Bunkers or part thereof for which payment has not been received, and [DOT] shall be entitled to repossess Bunkers for which payment has not been made without prior judicial intervention, all without prejudice to all other rights or remedies available to [DOT].

(Exh. B, General Terms, p. 9, art. H.3).

25.

Article H.5 of the General Terms provides as follows:

[DOT] has a maritime lien on the [GUO YUAN 20] for any unpaid amounts under the Agreement and shall be entitled to arrest/attach the [GUO YUAN 20] and/or sister ship and/or any other assets of the Buyer (or the Owner of the Vessel), cf. Clause C.5) wherever situated in the world without prior notice to obtain payment of the outstanding amounts.

(Exh. B, General Terms, p. 9, art. H.5).

26.

Article P.1 of the General Terms provides as follows:

This Contract shall be governed by and construed in accordance with Singapore law.

(Exh. B, General Terms, pp. 15, art. P.1).

27.

Article P.7 of the General Terms Provides as follows:

For the sole benefit of [DOT] it has further agreed that without prejudice to [DOT's] rights hereunder, [DOT] has the right to proceed against the Buyer, any third party or the Vessel in such jurisdiction as [DOT] in its sole discretion sees fit *inter alia* for the purpose of securing payment of any amount due to [DOT] from the Buyer or the Owner.

28.

Under Singapore law, in order for the admiralty jurisdiction of the Singapore Court to be invoked, a claim must fall within a prescribed list of maritime claims. Section 3 of the High Court (Admiralty Jurisdiction) Act (Chapter 123) ("HCAJA") sets out a list of claims for which the court may exercise admiralty jurisdiction to seize a vessel. Section 3(1)(l) of the HCAJA provides that:

"3.—(1) The admiralty jurisdiction of the High Court shall be as follows, that is

to say, jurisdiction to hear and determine any of the following questions or claims … any claim in respect of goods or materials supplied to a ship for her operation or maintenance"

Accordingly, a claim for outstanding payment in respect of bunkers supplied to the vessel for her operation or maintenance would fall under section 3(1)(l) of the HCAJA.

29.

Next, a plaintiff must also comply with one of the subsections of section 4(2)-(4) of the HCAJA. In the case at hand, the relevant provision is section 4(4) of the HCAJA, which provides that:

"(4) In the case of any such claim as is mentioned in section 3(1)(d) to (q), being a claim arising in connection with a ship, where the person who would be liable on the claim in an action in personam was, when the cause of the action arose, the owner or charterer of, or in possession or in control of, the ship, the admiralty jurisdiction of the High Court may (whether the claim gives rise to a maritime lien on the ship or not) be invoked by an action in rem against —

(a) that ship, if at the time when the action is brought the relevant person is either the beneficial owner of that ship as respects all the shares in it or the charterer of that ship under a charter by demise; or

(b) any other ship which, at the time when the action is brought, is beneficially owned as aforesaid."

30.

Therefore, pursuant to section 4(4) of the HCAJA, the following requirements must be satisfied:

(a) The claim must arise in connection with a ship; and

(b) The person held liable on the claim in an action in personam must be in certain prescribed control of the ship and must be the beneficial owner or demise charterer of the ship when admiralty proceedings are commenced.

31.

The first requirement of section 4(4) of the HCAJA is easily satisfied as ING's claim

arose in a connection with a ship, the GUO YUAN 20. The second requirement of section 4(4) of the HCAJA, that the person who would be liable on the claim in an action in personam (hereafter "the Relevant Person"), is the beneficial owner or demise charterer of the vessel, also appears to be met as either Shanghai Fujian or Fujian Guohang is the bareboat charterer/disponent owner of the GUO YUAN 20. See Seaweb detail for the GUO YUAN 20, a copy of which is attached as Exhibit C.

32.

Shanghai Guodian, which placed the bunkers order, is a subsidiary or alter ego of Fujian Guohang. Further, the address of Shanghai Guodian is listed as care of Shanghai Fujian. Accordingly, it appears that Shanghai Guodian ordered the bunkers as the agent of the disponent owner(s)/bareboat charterer(s). See Seaweb detail for Shanghai Guodian, attached as Exhibit D.

33.

Pursuant to section 3(1)(l) as well as Section 4(4) of the HCAJA, the GUO YUAN 20 could be seized under Singapore law on the basis that either Fujian Guohang or Shanghai Fujian were bareboat charterers of the vessel when the order for bunkers was placed and when the bunker invoice became due, and that the vessel continues to be bareboat chartered to either Shanghai Fujian or Fujian Guohang.

34.

DOT issued the Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V GUO YUAN 20 and/or Shanghai Guodian Shipping Company Limited and indicated that it would provide 500.00 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers to the GUO YUAN 20 in Hong Kong, China, with an estimated delivery date of between October 4 and October 8, 2014. (Exh. A, Confirmation, p. 1.)

35.

On October 8, 2014, pursuant to the Confirmation and the General Terms, the GUO YUAN 20 accepted the delivery of 499.321 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers from DOT. The bunker delivery was made on behalf of DOT as evidenced by the Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit E.

36.

On October 8, 2014, DOT issued an invoice to the GUO YUAN 20 and / or Owners/Charterers, which was addressed to Shanghai Guodian, referencing Confirmation No. 500-14625, in the amount of US$ 283,115.01 for 499.321 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers delivered to the GUO YUAN 20 in Hong Kong, to be paid on or before December 6, 2014, a true and correct copy of which is attached hereto as Exhibit F, hereafter "Invoice."

37.

As of this date, neither ING Bank nor DOT has been paid for the bunkers delivered to the GUO YUAN 20 in breach of the Confirmation and General Terms, and plaintiff is accordingly owed US$ 283,115.01 for the bunkers, fees and charges as aforesaid.

38.

Pursuant to the General Terms, Article I.5, DOT is entitled to recover contractual interest of two (2%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.00 per metric ton of bunkers supplied. (Exh. B, General Terms, p. 9, art. I.5.)

39.

Pursuant to the General Terms, Article I.5, all costs borne by DOT in connection with the

collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the Buyer's sole account. (*Id*., art. I.5.). Accordingly, DOT is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the GUO YUAN Invoice, including attorney's fees and costs associated with this civil action, and pursuant to the General Terms, the GUO YUAN 20, Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian remain jointly and severally liable for all amounts due and owing to DOT.

40.

As of the date of this filing, ING is owed the following amounts for unpaid bunkers delivered to the GUO YUAN 20:

| | | |
|---|---|---:|
| A. | Invoice | $283,115.01 |
| B. | Accrued Interest | $115,000.00 |
| C. | Administrative Fees | $750.00 |
| D. | Accrued and Anticipated Attorneys' Fees | $30,000 |
| TOTAL | | $428,865.01 |

**Request for Attachment of the GUO YUAN 20**
**Pursuant to Supplemental Admiralty Rule B**

41.

At all times relevant herein, the GUO YUAN 20 was owned and/or managed and/or demise chartered by Fujian Guohang and/or Shanghai Fujian, and beneficially owned by Minsheng.

42.

Upon information and belief, Fujian Guohang, Shanghai Fujian, Minsheng, and Shanghai Guodian cannot be found within this District but have or will have property within this District, including, but not limited to, the GUO YUAN 20, which vessel is presently, or shortly will be, within this District.

43.

Pursuant to Rule B and Singaporean law, DOT is entitled to attach all of Minsheng's property within this District, as well as all of the Fujian Guohang Group's property within the district including, but not limited to, the GUO YUAN 20, to satisfy DOT's claims, as well as other costs taxable as a result of OW Bunker's having to bring this action, including but not limited to pre-judgment interest, costs, expenses, and attorneys' fees.

44.

This Rule B attachment has been brought in order to obtain personal jurisdiction over Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian, for purposes of recouping payment for the unpaid bunkers ordered by Shanghai Guodian, and delivered to the GUO YUAN 20 as described herein.

45.

ING Bank agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the attachment of the aforesaid GUO YUAN 20, and all property of Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian aboard that vessel or located within this District.

46.

All and singular the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

**WHEREFORE**, plaintiff, ING Bank N.V., prays:

1. That this Verified Complaint be deemed good and sufficient;

2. That process in due form of law, according to the rules and practices of this Honorable Court, issue against Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian, requesting them to appear and answer all singular the matters aforesaid;

3. That because Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian are foreign corporations which cannot be found within this District, are not qualified to do business in the State of Louisiana, and have no agent for the service of process, that all of Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian's goods, chattels, funds, credits, money and other assets or property found within this District, including the M/V GUO YUAN 20, IMO No. 9579286, her engines, tackle, equipment, furniture, appurtenances, etc., be attached to satisfy the sum of OW Bunker's claims up to the amount of $428,865.01, plus contractual attorneys' fees, costs, expenses and interest, which continue to accrue during the pendency of this action and any appeal thereof, all pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, including the fees and costs of the United States Marshall;

4. That this Court issue a Writ of Maritime Attachment and Garnishment of all property of Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian

    in this District to the Master of the M/V GUO YUAN 20;

5. That this Court retain the attached property and/or the proceeds of sale as security pending adjudication of DOT's claims against Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian;

6. That any property attached in this proceeding be sold under the direction of this Court and the proceeds of the sale be deposited into the Registry of this Court;

7. That this Court retain jurisdiction over Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian to attach their property found within the District in order to enter a judgment in favor of ING Bank and against Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian, *in personam*, in the amount of ING Bank's claim and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest for ING Bank's damages;

8. That after due proceedings are had, there be judgment entered in favor of plaintiff, ING Bank N.V., and against defendants Minsheng, Fujian Guohang, Shanghai Guodian, and Shanghai Fujian, *in personam*, requiring defendants to pay damages to plaintiff in the amount of US$ TOTAL for bunkers delivered to the GUO YUAN 20, and all other damages as may be proven at trial, with prejudgment interest, attorney's fees, and all costs of these proceedings; and

9. That this Court grant ING Bank such other and further relief as may be just and proper.

Respectfully submitted:

*/s/ Robert J. Stefani,*
**JAMES D. BERCAW, #20492**
**ROBERT J. STEFANI, #19248**
**LAURA E. AVERY, #35636**
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
E-Mail: jbercaw@kingkrebs.com
 rstefani@kingkrebs.com
 lavery@kingkrebs.com

*Attorneys for ING Bank N.V.*

**PLEASE SERVE:**

**The Master of the M/V GUO YUAN 20, IMO 9579286**
**And Issue a Writ of Maritime Attachment to attach the M/V GUO YUAN 20**